1  **WO**                                                                    MGD

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Devin Andrich,                              No.   CV 20-00422-TUC-RM

10                          Plaintiff,

11  v.                                          **ORDER**

12  Christina Phillis, et al.,

13                          Defendants.

14

15          Plaintiff Devin Andrich filed a pro se Complaint in Pima County Superior Court,

16  and Defendant Christina Phillis removed the case to this Court.  Andrich subsequently filed

17  a First Amended Complaint pursuant to 42 U.S.C. § 1983 and Arizona state law.  (Doc.

18  19.)  Pending before the Court are Motions to Dismiss filed by Defendants Cedric Martin

19  Hopkins and The Hopkins Law Office (collectively, "Hopkins") (Doc. 28), Christina

20  Phillis (Doc. 29), and Bobby O'Dell Thrasher and Thrasher Law PLLC (collectively,

21  "Thrasher") (Doc. 33).  Andrich was informed of his rights and obligations to respond

22  (Doc. 34), and he opposes the Motions.  (Doc. 38, 39, 40.)

23  **I.     First Amended Complaint**

24          Andrich alleges the following in his First Amended Complaint.  Andrich is a former

25  attorney who was indicted by the State of Arizona on February 18, 2014, in Maricopa

26  County Superior Court, *State of Arizona v. Andrich*, No. CR2014-108114, on suspicion of

27  misappropriation of client funds.  (Doc. 19 ¶¶ 20, 24.)  A month before the indictment,

28  Andrich retained Defendant Thrasher to represent him.  (*Id.* ¶ 23.)  In March and April

2014, Andrich and Thrasher had conversations and exchanged text messages during which Thrasher "refused to accept his fiduciary duties to [Andrich] and store and maintain [Andrich's] copies of client files to assist in Andrich's defense in *State v. Andrich*." (*Id.* ¶ 30.) Instead, Andrich's former clients, named Meyers, agreed to store Andrich's property, including Andrich's laptop and server containing Andrich's copies of client files, at Meyers' residence until Andrich resolved his criminal case and completed any term of incarceration. (*Id.* ¶¶ 31, 33.) Andrich lived at the Meyers' residence from April through October 2014, until the Meyers threatened to have the police remove Andrich from their property. (*Id.* ¶¶ 35-38.)

On November 7, 2014, Meyers filed a charge against Andrich with the State Bar of Arizona alleging that Andrich had misappropriated funds from him. (*Id.* ¶ 45.) Andrich needed his laptop, server and hard copies of client files stored at Meyers' residence to respond to the charge. (*Id.* ¶ 47.) Around December 21, 2014, Andrich asked his system administrator, Jay Steitz, to contact Meyers and recover Andrich's laptop, server and clothing, but Meyers told Steitz he had donated Andrich's clothing to charity and refused to return Andrich's laptop. (*Id.* ¶¶ 48-52.) Meyers did turn over Andrich's server on January 7, 2015, but when Steitz ran a diagnostic, he "discovered that Meyers had removed the server's hard drives from the server." (*Id.* ¶¶ 55-56.) Around January 31, 2015, the state court issued an Order to Compel, directing Meyers to produce Andrich's laptop and server hard drives to Andrich and Thrasher. (*Id.* ¶ 65.) Thrasher "refus[ed] to effectuate personal service" of the state court order and instead opted to e-mail and mail the order to Meyers on February 2, 2015. (*Id.* ¶ 66.) Around May 12, 2015, Thrasher "refus[ed] to file a Petition for Order to Show Cause against Meyers" and instead e-mailed and mailed Meyers asking him to call Thrasher. (*Id.* ¶ 67.) Meyers asserted during a deposition taken March 27, 2019, that during a conversation with Thrasher on May 12, 2015, Meyers asked Thrasher what to do with Andrich's possessions, and Thrasher told Meyers he "wanted nothing of [Andrich's]." (*Id.* ¶ 68.)

On July 8, 2015, the court in *State v. Andrich* entered deferred acceptance of Andrich's plea agreement and sentenced Andrich to 3.5 years in prison.[1]  (*Id.* ¶ 75.)  During the sentencing, the Maricopa County Attorney's Office ("MCAO") informed the court and Andrich that Thrasher would be withdrawing from representation of Andrich.  (*Id.* ¶ 77.)  The state court said it would maintain jurisdiction of the case until the parties resolved outstanding restitution issues and would appoint counsel to assist Andrich.  (*Id.* ¶¶ 78-79.)  Between July 8 and August 5, 2015, Thrasher "refused responding to Plaintiff's letters inquiring about new counsel, the status of producing PACER and ECR records to the State of Arizona or the upcoming restitution hearing."  (*Id.* ¶ 82.)  On August 5, 2015, Andrich filed a motion to terminate Thrasher, but the state court never issued an order on the motion.  (*Id.* ¶¶ 84, 86.)  Andrich has since learned that, without his knowledge or consent, Thrasher and the MCAO informed the court clerk to vacate the September 9, 2015 restitution hearing.  (*Id.* ¶ 91.)  Andrich sent a letter to Thrasher on October 2, 2015 instructing Thrasher to preserve all text messages and e-mails that were exchanged between Thrasher and Andrich, the MCAO, the Maricopa County Sheriff's Office, the state bar, and Meyers during Thrasher's representation of Andrich in *State v. Andrich*, and Andrich instructed Thrasher to preserve the letter because the Arizona Department of Corrections ("ADC") would not allow Andrich to make a copy of it.[2]  (*Id.* ¶ 94.)

On October 5, 2015, Andrich filed a Notice of Post-Conviction Relief ("PCR") alleging ineffective assistance of counsel.  (*Id.* ¶ 97.)  The state court appointed Defendant Hopkins to represent Andrich in the PCR proceedings, and Hopkins represented Andrich pursuant to terms of a contract Hopkins entered into with Defendant Phillis, the Director of the Maricopa County Office of Public Defense Services ("OPDS").  (*Id.* ¶¶ 7, 98.)  In

---

[1] As discussed in Section III of this Order, the Court takes judicial notice of certain documents from Andrich's state court cases, including the plea agreement in *State v. Andrich*.  In the plea agreement and addendum, signed by Andrich, Andrich "SPECIFICALLY AGREES TO THE RESTI[T]UTION IN THE ATTACHED ADDENDUM OF THIS PLEA AGREEMENT," which totaled nearly $400,000.  (Doc. 33-2 at 5-9 (emphasis in original).)

[2] Andrich entered into the custody of the ADC on July 10, 2015 and was released on September 1, 2017.  (*See* Doc. 19 ¶¶ 81, 137.)

correspondence with Hopkins, Andrich instructed Hopkins to "work with the State of Arizona to deliver the PACER and ECR records that would assist the State objectively lowering restitution amounts listed on [Andrich's] Criminal Restitution Order," and Andrich instructed Hopkins to obtain the text messages that Andrich's October 2, 2015 letter had instructed Defendant Thrasher to preserve. (*Id.* ¶¶ 100-101.) "On information and belief, Attorney Hopkins acquired Attorney Thrasher's text messages exchanged with the State and [Andrich] concerning the location of [Andrich's] files and former clients' files." (*Id.* ¶ 105.) In correspondence, however, Hopkins claimed he only spoke with Thrasher on the telephone about the text messages. (*Id.* ¶ 106.) On April 11, 2016, in a Notice of Completion, Hopkins "intentionally misrepresented to the State Court that [he] had reviewed all the correspondence from the file and determined that no colorable issue existed." (*Id.* ¶ 112.)

The state court thereafter permitted Andrich to file a pro se PCR, naming Hopkins as Andrich's court-appointed advisory counsel, and on April 27, 2016, Hopkins filed a Notice of Compliance, avowing that he had delivered a CD containing all correspondence from Andrich's case. (*Id.* ¶¶ 113-115.) When Andrich reviewed the CD, he determined that Hopkins "had frustrated" his attempts to file a PCR "by suppressing" all text messages and notes about Andrich's case and "suppressing" Andrich's October 2, 2015 letter to Thrasher directing Thrasher to preserve all emails, text messages, correspondence and notes about Andrich's case. (*Id.* ¶¶ 116-118.)

Around July 22, 2016, the state court appointed Janelle McEachern as advisory counsel to assist Andrich with his pro se PCR. (*Id.* ¶ 123.) Around August 3, 2016, Thrasher filed a Notice of Compliance with the state court indicating that after Hopkins asked Thrasher for the text messages, Thrasher deleted the text messages, changed his cell phone provider, and did not know the whereabouts of his old cell phone.[3] (*Id.* ¶ 121.)

---

[3] Thrasher's Amended Notice of Compliance filed on August 3, 2016, states that at the request of Hopkins, Thrasher reviewed the text messages exchanged with the prosecutor on or about December 21, 2015, and sent an email to Hopkins that same day stating that the text messages with the prosecutor "contained no substantive discussions regarding [Andrich's] matter," and that this "would be consistent with [Thrasher's] general

Around November 1, 2016, McEachern delivered a letter to Andrich claiming that she did not have Andrich's state court file.  (*Id.* ¶ 130.)

Between January 2017 and March 2018, Andrich made Defendant Phillis aware of a federal lawsuit he had filed in *Andrich v. Ryan*, CV 17-00047-TUC-RM, and he "encouraged that Phillips provide [Andrich] his entire file, case law and legal supplies necessary for [Andrich] to prepare his [PCR]."  (*Id.* ¶¶ 131-132.)  Phillis "ignored or otherwise denied [Andrich's] requests[.]"  (*Id.* ¶ 133.)  In May 2017, Andrich sent Phillis a letter asking for his file, court documents, and a copy of <u>Arizona Civil Trial Practice 2017</u>.  (*Id.* ¶ 134.)  Phillis responded on May 19, 2017 that OPDS and Phillis would not purchase the book for Andrich or provide case law, court records, or Andrich's state court file.  (*Id.* ¶ 135.)

On December 11, 2017, Andrich filed his PCR without the correspondence and documents necessary to comply with Arizona rules because Hopkins "refused to provide them, and Phillis ratified Attorney Hopkins' suppression as [Andrich's] advisory counsel."  (*Id.* ¶ 139.)  On July 20, 2018, the state court dismissed Andrich's PCR.  (*Id.* ¶ 140.)  As of the filing of Andrich's Complaint, "Phillis, Hopkins and Thrasher refuse to provide [Andrich's] entire *State v. Andrich* file to [Andrich]."  (*Id.* ¶ 141.)

Andrich currently has a Petition for Writ of Habeas Corpus pending in the United States District Court for the District of Arizona, *Andrich v. Cimino*, No. 20-CV-01649-GMS-PHX (MTM) (D. Ariz.), but he cannot file a thorough and complete Petition because Hopkins and Thrasher refuse to provide Andrich's entire file in *State v. Andrich*.  (*Id.* ¶¶ 142-143.)

Around October 21, 2020, Thrasher sent Andrich a notice pursuant to Local Rule of Civil Procedure 12.1(c) threatening that if Andrich did not dismiss the claims against him,

---

practice not to engage in substantive discussions regarding cases in text messages." (Doc. 33-4 at 50.)  Thrasher asserted that he could not include those text messages exchanged with the prosecutor because he changed his cellular service and no longer had the cell phone used during Andrich's case.  (*Id.*)  Thrasher stated that he did include almost 450 emails he had received during his representation of Andrich, even though he does not generally provide emails as part of the file being produced to PCR counsel.  (*Id.*)

1  Thrasher intended to pursue all remedies available under Arizona law including
2  counterclaims for abuse of process as well as breach of contract.  (*Id.* ¶ 149.)

3      Andrich alleges First Amendment claims against Phillis in Counts One, Two, Three,
4  and Four, as well as Fourteenth Amendment claims against Phillis in Counts Three and
5  Five.  Andrich alleges First Amendment claims against Hopkins in Counts One, Three, and
6  Four, Fourteenth Amendment claims against Hopkins in Counts Three and Four, and state
7  law claims against Hopkins in Counts Seven (abuse of process) and Nine (aiding and
8  abetting).  Andrich alleges state law claims against Thrasher in Counts Six (aiding and
9  abetting), Seven (abuse of process), Eight (conversion), Ten (fraudulent concealment), and
10 Eleven (abuse of process).

11 **II.    Federal Rule of Civil Procedure 12(b)(6)**

12      Dismissal of a complaint, or any claim within it, for failure to state a claim under
13 Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable
14 legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"
15 *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting
16 *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining
17 whether a complaint states a claim under this standard, the allegations in the complaint are
18 taken as true and the pleadings are construed in the light most favorable to the nonmovant.
19 *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  A
20 pleading must contain "a short and plain statement of the claim showing that the pleader is
21 entitled to relief."  Fed. R. Civ. P. 8(a)(2).  But "[s]pecific facts are not necessary; the
22 statement need only give the defendant fair notice of what . . . the claim is and the grounds
23 upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation
24 omitted).  To survive a motion to dismiss, a complaint must state a claim that is "plausible
25 on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v.
26 Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff
27 pleads factual content that allows the court to draw the reasonable inference that the
28 defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Where the plaintiff

is a pro se prisoner, the court must "construe the pleadings liberally and [] afford the petitioner the benefit of any doubt." *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010).

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id.*

**III.    Judicial Notice**

Defendants ask the Court to take judicial notice of exhibits attached to their Motions. (Doc. 28 at 2; Doc. 38 at 1-3; Doc. 33 at 2-3.)

Defendant Hopkins attaches to his Motion the Superior Court's October 26, 2015 order appointing Hopkins to represent Andrich in his PCR proceedings in the Maricopa County Superior Court case *Arizona v. Andrich*, No. CR2014-108114-001 SE (Doc. 28-1 at 2-3); Hopkins' Notice of Completion to the Superior Court filed April 11, 2016, concluding that there were no legitimate claims raised under Rule 32 of the Arizona Rules of Criminal Procedure (Doc. 28-1 at 5-7); Hopkins' June 24, 2016 Motion to Withdraw as Advisory Counsel, in which Hopkins informed the court that Andrich had named Hopkins in a lawsuit filed in federal court, creating a conflict of interest (Doc. 28-1 at 9-10); the Superior Court's July 22, 2016 order granting the Motion to Withdraw and appointing Janelle McEachern to represent Andrich in the Rule 32 proceeding (Doc. 28-1 at 12-13); and the Superior Court's order dated June 13, 2018 and filed June 20, 2018, dismissing the PCR, in which Judge Gates explained why Andrich's claims lacked merit, that Andrich had stipulated to the restitution amounts in his plea agreement that he was now seeking to dispute, that Andrich was not entitled to a restitution hearing during which the State was

obligated to prove restitution, and that Andrich had failed to establish that Hopkins and Thrasher's performances were deficient or that Andrich "was prejudiced by either counsel's alleged inability to locate records for the State's review after entry of the Plea Agreement and sentencing" (Doc. 28-1 at 15-19).  Hopkins also attaches a Request for Expenditure of Funds he submitted to the Maricopa County Office of Contract Counsel, requesting an investigator be approved for five hours of work to obtain documents that would show Andrich did actually do work on some victims' cases.  (Doc. 28-1 at 21-22.)

Defendant Phillis attaches to her Motion the same Superior Court order dismissing Andrich's PCR as well as a Minute Entry entered on February 24, 2020 by Judge James D. Smith declaring Andrich a vexatious litigant in Maricopa County Superior Court case *Andrich v. Meyers*, No. CV 2018-000376 (Doc. 29-1 at 3-11); Andrich's Complaint dated January 3, 2017 in *Andrich v. Ryan*, CV 17-00057-TUC-RM (D. Ariz.), in which Phillis was named as a Defendant and Andrich alleged the same facts against Phillis as in the present case (Doc. 29-1 at 13-51); this Court's May 22, 2020 Order granting summary judgment to Defendant McEachern in *Andrich v. Ryan* (Doc. 29-1 at 53-78); this Court's January 10, 2020 Order in *Andrich v. Ryan* dismissing the claims against Phillis without prejudice for failure to timely serve her (Doc. 29-1 at 80-84); and the Arizona Court of Appeals' Memorandum Decision filed January 10, 2019, granting review of the dismissal of Andrich's PCR but denying relief (Doc. 29-1 at 86-90).

Defendant Thrasher attaches 22 exhibits to his Motion, 10 of which are from Plaintiff's state court criminal case, as well as Minute Entries from *Andrich v. Meyers*, and a list of 33 cases filed in state and federal courts by Andrich.  (Docs. 33-2 at 2 through Doc. 33-8 at 10.)

A court may take judicial notice of proceedings "in other courts" on its own volition when those proceedings "have a direct relation to matters at issue."  Fed. R. Evid. 201(c)(1); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2006).  Andrich does not dispute any of the submitted documents, the Court finds no basis to question the accuracy of the state court documents and, therefore, the Court takes judicial notice of the state court

documents that Defendants have submitted to the Court. The Court, however, does not take judicial notice of the Request for Expenditure of Funds or the list of cases filed by Andrich because those documents are not from proceedings in other courts and do not otherwise qualify as the kind of facts that may be judicially noticed pursuant to Rule 201(b) of the Federal Rules of Evidence.

**IV.     Defendant Hopkins' Motion to Dismiss**

Defendant Hopkins seeks to dismiss Counts One (First Amendment), Three (First and Fourteenth Amendments), Four (First Amendment), Seven (abuse of process), and Nine (aiding and abetting) as barred by the statute of limitations, for failure to state a claim, and because Andrich previously litigated and lost these claims in state trial and appellate courts. (Doc. 28.)

**A.     Counts One, Three, and Four (Constitutional Claims)**

Andrich alleges in Count One that Hopkins violated his First Amendment rights by refusing to deliver Andrich's entire file to Andrich, specifically all text messages, emails, and Andrich's October 2, 2015 letter to Thrasher, and refusing to purchase and provide case law Andrich needed for his PCR, thereby denying Andrich access to the court. (*Id.* ¶¶ 154-166.) Andrich alleges in Count Three that Hopkins violated his First Amendment and Fourteenth Amendment rights by withholding case law, documents, legal supplies, and the state court file that Andrich needed to bring a meritorious PCR. (*Id.* ¶¶ 175-182.) Andrich alleges in Count Four that Hopkins violated his First Amendment rights by withholding evidence Andrich needs for his Petition for Writ of Habeas Corpus, specifically the text messages, emails, and Andrich's October 2, 2015 letter to Thrasher. (*Id.* ¶¶ 183-192.)

**1.     Color of State Law**

A prerequisite for any relief under § 1983 are allegations to support that a defendant acted under the color of state law. The under color of state law component is the equivalent of the state action requirement under the Constitution. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982); *Jensen v. Lane Cnty.*, 222 F.3d 570, 574 (9th Cir. 2000) (citing

*Rendel-Baker v. Kohn*, 457 U.S. 830, 838 (1982)); *West v. Atkins*, 487 U.S. 42, 49 (1988)). Acting under color of state law is a jurisdictional requisite for a § 1983 action. *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001) (quoting *West*, 487 U.S. at 46). Whether an attorney representing a criminal defendant is privately retained, a public defender, or court-appointed counsel, he or she does not act under color of state law. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 317-18 (1981); *Miranda v. Clark Cnty., Nevada*, 319 F.3d 465, 468 (9th Cir. 2003) (en banc).

Hopkins argues that Andrich fails to state a claim in Counts One, Three, and Four because at the time he was appointed as advisory counsel to Andrich, Hopkins operated a private law office and therefore did not act under color of state law. (Doc. 28 at 7.) Hopkins further argues that Andrich has not alleged that Hopkins conspired with any state actor to deprive Andrich of any constitutional right. (*Id.*) Andrich responds that it "is well settled in this Court: When Defendant Hopkins acted as advisory counsel to Plaintiff, Defendant Hopkins acted under color of state law." (Doc. 38 at 9.) Andrich cites two cases that explain the role of advisory counsel, but neither case addresses whether advisory counsel to a defendant pursuing post-conviction relief is acting under color of state law. *See Savage v. Estelle*, 924 F.2d 1459 (9th Cir. 1990); *McKaskle v. Wiggins*, 465 U.S. 168 (1984).

As court-appointed advisory counsel to Andrich in his criminal case, Hopkins did not act under color of state law. *See Polk*, 454 U.S. at 317-18. Andrich's constitutional claims against Hopkins must therefore fail unless Andrich has set out facts showing a conspiracy between Hopkins and state officials to deny him his rights. *See Tower v. Glover*, 467 U.S. 914, 920 (1984) ("an otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights") (citation omitted). Andrich has made no such conspiracy allegations. Accordingly, the Court will dismiss Counts One, Three, and Four as to Hopkins.

. . . .

. . . .

1

2. **Statute of Limitations**

2        Alternatively, Andrich's constitutional claims against Hopkins are barred by the

3   statute of limitations.   Section 1983 does not include its own statute of limitations.

4   *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).   Therefore, federal courts apply the

5   statute of limitations governing personal injury claims in the forum state, "along with the

6   forum state's law regarding tolling, including equitable tolling, except to the extent any of

7   these laws is inconsistent with federal law." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766

8   F.3d 1191, 1198 (9th Cir. 2014) (citation omitted).   In Arizona, the limitations period for

9   personal injury claims is two years. *Marks v. Parra*, 785 F.2d 1419, 1420 (9th Cir. 1986);

10  *see also* Ariz. Rev. Stat. § 12-542 (providing that actions for personal injury must be

11  commenced within two years after the cause of action accrues).

12       Although the statute of limitations applicable to § 1983 claims is borrowed from

13  state law, federal law continues to govern when a § 1983 claim accrues. *Wallace v. Kato*,

14  549 U.S. 384, 388 (2007); *TwoRivers*, 174 F.3d at 991.   Under federal law, a claim accrues

15  "when the plaintiff knows or has reason to know of the injury" that is the basis of the claim.

16  *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (internal

17  quotation marks omitted).

18       "The purpose of a statute of limitation is to prevent assertion of stale claims against

19  a defendant." *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) (internal citation omitted).

20  "Where the danger of prejudice to the defendant is absent, and the interests of justice so

21  require, equitable tolling of the limitations period may be appropriate." *Id.*  Because it is

22  proper to apply Arizona's statute of limitations, Arizona's tolling rules apply where not

23  inconsistent with federal law.  *See id.*

24       Hopkins argues that any alleged injury he caused Andrich would have stopped on

25  July 21, 2016, when the state court issued an order withdrawing Hopkins as advisory

26  counsel.  (Doc. 28 at 4.)   Hopkins argues it would be a legal impossibility for him to

27  continue causing Andrich injury by failing to provide Andrich with materials when he was

28  no longer legally or ethically obligated to do so.  (*Id*.)  Hopkins therefore contends that

1   Andrich's claim accrued on July 21, 2016, and Andrich had until July 21, 2018 to file his

2   Complaint.  (*Id*.)   The latest date that Andrich's claims accrued, Hopkins argues, was

3   December 11, 2017, when Andrich filed his PCR, because Andrich argues he was forced

4   to file a substandard petition due to not receiving various materials to support his petition.

5   (*Id*.)  Whether the claims accrued on July 21, 2016 or December 11, 2017, because Andrich

6   did not file his Complaint until June 22, 2020, Hopkins argues that Andrich's claim is time

7   barred.  (*Id*.)

8        Andrich responds that his claims accrued on June 20, 2018, when the state court

9   dismissed his PCR, because that is when he could discover all the elements to his cause of

10  action.  (Doc. 38 at 4-5.)  Andrich argues that under *Platt Electric Supply, Inc. v. EOFF*

11  *Electric, Inc.*, the statute of limitations does not begin to run until he either discovered or

12  had reason to discover all the elements of his claim.  (*Id*. (citing 522 F.3d 1049, 1054 (9th

13  Cir. 2008).)  Andrich contends that for his access-to-the-court claim, he had to demonstrate

14  actual injury, and that he did not suffer actual harm until the state court denied his PCR.[4]

15  (*Id*. at 5-6 (citing, in part, *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996) (to show actual

16  injury with respect to contemplated litigation, the plaintiff must demonstrate that the

17  defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim

18  that he wished to present)).)  Andrich further contends that his "forward-looking" claim

19  against Defendant Hopkins did not accrue until August 21, 2020, when Andrich filed a

20  "procedurally deficient Petition with the District Court in *Andrich v. Cimino*," and that

21  Hopkins continues to withhold relevant portions of Andrich's state court criminal file.  (*Id*.

22  at 6.)

23        Under the "discovery rule," the statute of limitations period does not begin until the

24  plaintiff "has knowledge of the 'critical facts' of his injury, which are 'that he has been

25

26

27        [4] In *Andrich v. Ryan*, this Court granted summary judgment to Defendant
    McEachern on Andrich's access-to-court claim, finding "no evidence that Plaintiff suffered
28  an actual injury as a result of Defendant McEachern's actions," and that Plaintiff was able
    to file his PCR and have it decided on the merits.  (Doc. 29-1 at 59 (Order dated May 22,
    2020 in *Andrich v. Ryan*, No. CV 17-0047-TUC-RM).)

hurt and who has inflicted the injury.'" *Bibeau v. Pac. NW Research Found., Inc.*, 188 F.3d 1105, 1108 (9th Cir.1999) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)).

Plaintiff did not need to wait for the denial of his PCR to discover the elements to his claims. That is because Andrich alleges that on April 27, 2016, Hopkins filed a Notice of Compliance, avowing that he had delivered a CD containing all correspondence from Andrich's case, but when Andrich reviewed the CD, he determined that Hopkins had "frustrated Plaintiff's attempts to file for post-conviction relief" by "suppressing" the text messages from Thrasher, Thrasher's notes, and Andrich's October 2, 2015 letter to Thrasher. (Doc. 19 ¶¶ 113-118.) Andrich further alleges that he filed his PCR on December 11, 2017, "without the correspondence and documents necessary to comply with Ariz. R. Crim. P. 32.5(a)&(d), because [] Hopkins refused to provide them . . . ." (*Id.* ¶ 139.) Based on these allegations, Andrich knew of his injury when he reviewed the CD from Hopkins, but he does not say on what date he reviewed the CD. At the latest, Andrich knew of his injury by December 11, 2017, when he filed his PCR, because he knew he did not have the correspondence and documents he believes he needed to file a successful PCR. Therefore, Andrich had until December 11, 2019 to file his claims against Hopkins. Because Andrich did not file his original Complaint naming Hopkins as a Defendant until June 22, 2020, his claims against Hopkins in Counts One, Three, and Four are barred by the statute of limitations, and the Court will dismiss these claims.[5]

### B.    Counts Seven and Nine (State Law Claims)

Andrich asserts an abuse-of-process claim in Count Seven and an aiding and abetting claim in Count Nine against Hopkins. Hopkins says he joins in Thrasher's Motion to Dismiss as to these two claims. (Doc. 28 at 8.) The Court will therefore discuss these claims in the next section when it addresses Thrasher's Motion.

. . . .

---

[5] Because the Court is dismissing the claims against Hopkins in Counts One, Three, and Four on the basis that Hopkins did not act under color of state law and as barred by the statute of limitations, the Court will not address Hopkins' additional argument that all claims against him are barred by res judicata and/or collateral estoppel. (Doc. 28 at 8-9.)

1    **V.     Defendant Thrasher's Motion to Dismiss**

2           Thrasher moves to dismiss Counts Six (aiding and abetting), Seven (abuse of

3    process), Eight (conversion), Ten (fraudulent concealment), and Eleven (abuse of process)

4    on the basis that those Counts are barred by the statute of limitations, fail to state a claim,

5    and are precluded because Andrich previously litigated and lost the claims in state trial and

6    appellate courts.[6]  (Doc. 33 at 1-2.)

7           **A.     Count Six**

8           Andrich alleges in Count Six that Thrasher "aided and abetted Meyers' conversion

9    and theft of Plaintiff's possessions" on May 12, 2015.  (Doc. 19 ¶¶ 198-205.)

10          Andrich bases Count Six on Meyers' deposition testimony that on May 12, 2015,

11   Meyers asked Thrasher what to do with Plaintiff's possessions, and Thrasher said he

12   "wanted nothing of [Andrich's]."  (*Id.* ¶ 202.)  Andrich argues he did not learn about this

13   conversation until Meyer's deposition on March 27, 2019, and therefore his claim did not

14   accrue until March 27, 2019.  (Doc. 40 at 3.)

15          The statute of limitations on an aiding and abetting claim begins to run when the

16   plaintiff has, or should have had, sufficient information to bring the underlying primary

17   claim.  *Chonczynski v. Aguilera*, No. 1 CA-CV 13-0728, 2014 WL 6790738, at *5 (Ariz.

18   App. Dec. 2, 2014) (citing *Flannery v. Singer Asset Fin. Co., LLC,* 94 A.3d 553, 567 n.23

19   (Conn. 2014) ("[T]he limitations period on a cause of action for aiding and abetting a tort

20   is the same as that for the underlying tort.")

21          In this case, the underlying claim is Meyers' alleged conversion of Andrich's

22   property, which Andrich knew about by January 8, 2015, when Plaintiff alleges Steitz

23   informed Andrich, after recovering Andrich's servers from Meyers, that the hard drives

24   had been removed and Meyers had donated Plaintiff's clothing to charity.[7]  (*See* Doc. 19

25   ─────────────────────────

26          [6] Thrasher primarily bases this last argument on the fact that the state court declared
     Andrich a vexatious litigant and not because the specific claims against Thrasher before
27   this Court were actually litigated.  (*See* Doc. 33 at 22-23.)

28          [7] In Andrich's state court lawsuit against Meyers, the trial court found that Steitz
     only had personal knowledge as to the computer equipment he sold to Andrich before
     Andrich's incarceration and "had no personal knowledge of what property [Andrich] left

1    ¶¶ 51, 55-56.)   That same day, Andrich alleges he informed the Maricopa County

2    Attorney's Office and Maricopa County Sheriff's Office that Meyers had stolen his laptop

3    and server hard drives "containing Plaintiff's copies of all former client files." (*Id.* ¶¶ 62,

4    64.)  Therefore, Andrich had sufficient information to bring his conversion claim against

5    Meyers on January 8, 2015, which is when the statute of limitations on his aiding and

6    abetting claim against Thrasher began to run, and he had until January 8, 2017 to file his

7    aiding and abetting claim against Thrasher.[8]  Because Andrich did not file this claim until

8    June 22, 2020, the claim is barred by the statute of limitations.

9         Alternatively, Plaintiff fails to state an aiding and abetting claim.  A claim of aiding

10   and abetting requires proof of three elements: (1) the primary tortfeasor caused injury to

11   the plaintiff; (2) the defendant knows the primary tortfeasor's conduct constitutes a breach

12   of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor

13   in achieving the breach.  *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement*

14   *Masons Local No. 195 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002).

15        According to Andrich's timeline of events, Meyers' alleged conversion of Andrich's

16   property was complete by January 8, 2015.  Plaintiff does not allege that Thrasher had any

17   communication with Meyers until he emailed the state court's order to compel to Meyers

18   on February 2, 2015, and Thrasher did not speak with Meyers until May 12, 2015, when

19   Plaintiff alleges Thrasher told Meyers he "wanted nothing of [Andrich's]." (Doc. 19 ¶ 67.)

20   Therefore, Thrasher could not have substantially assisted or encouraged Meyers in

21   achieving a breach of any duty Meyers owed to Andrich because the alleged conversion

22   had already occurred before Thrasher was involved.

23        Accordingly, the Court will dismiss Count Six.

24   . . . .

25   . . . .

26   
27   at Meyers' house or whether Meyers removed hard drives from a server (as [Andrich]
     alleged)." (Doc. 33-6 at 35.)

28        [8] The state court likewise found that Andrich's conversion claim against Meyers
     accrued on January 8, 2015, and that the claim was time barred.  (Doc. 33-8 at 6.)

1

**B.      Counts Seven, Eight, and Ten**

2       Andrich alleges in Count Seven that Thrasher and Hopkins "committed abuse of

3   process against Plaintiff when filing notices of completion that falsely stated each delivered

4   Andrich's *State v. Andrich* file to Andrich." (*Id.* ¶¶ 206-214.)  Andrich alleges in Count

5   Eight that Thrasher converted Andrich's *State v. Andrich* file by seizing and retaining parts

6   of the file that Thrasher determined relevant to Plaintiff's ineffective assistance of counsel

7   claims against Thrasher.  (*Id.* ¶¶ 215-219.)  Andrich alleges in Count Ten that Thrasher

8   committed fraudulent concealment by withholding Andrich's *State v. Andrich* file during

9   an ongoing petition for writ of habeas corpus and other matters.  (*Id.* ¶¶ 227-231.)

10      Thrasher argues that Andrich was aware of the facts supporting his claims nearly

11  four years before he filed his Amended Complaint, as evidenced by Andrich's Motion to

12  Extend filed on July 8, 2016 in state court accusing Thrasher of perjury, of converting

13  and/or concealing parts of Andrich's file, and of omitting this information from Thrasher's

14  Notice of Compliance.  (Doc. 33 at 11-12, citing Ex. 6 (Doc. 33-2 at 51-72).)  Because

15  Andrich was aware of the underlying facts supporting his allegations of abuse of process,

16  conversion, and fraudulent concealment on or before July 8, 2016, Thrasher contends the

17  statute of limitations expired on or before July 8, 2018.  (*Id.* at 12.)  Alternatively, Thrasher

18  argues that Andrich's abuse of process claim in Count Seven accrued on August 3, 2016,

19  when Thrasher filed his Amended Notice of Compliance in state court, or on September 8,

20  2016, when Andrich acknowledged he received the Notice, and Plaintiff therefore had until

21  September 8, 2018, at the latest, to file his complaint.  (*Id.* at 13-14.)

22      Plaintiff responds that "Thrasher withheld and continues to withhold specific parts

23  of Plaintiff's *State v. Andrich* file," that he did not suffer "ascertainable damages" until the

24  state court denied his PCR on June 20, 2018, and that the case continues forward today via

25  the *Andrich v. Cimino* petition.  (Doc. 40 at 6.)  Plaintiff further contends that Defendants

26  Thrasher and Hopkins' "constructive fraud" against him supports equitable tolling because

27  they continue to withhold part of his file during ongoing judicial proceedings.  (*Id.* at 7-8.)

28

1    In the primary constructive fraud case cited by Plaintiff, which involved a defendant

2    dentist who withheld medical information from the plaintiff, the Arizona Supreme Court

3    held that "[c]onstructive fraud arises out of a fiduciary or confidential relationship" and

4    continued until the plaintiff "became apprised of the true condition existing within his

5    mouth, or by the exercise of reasonable diligence should have learned the cause of his

6    illness." *Morrison v. Acton*, 68 Ariz. 27, 25 (Ariz. 1948) (holding that constructive fraud

7    tolled the statute of limitations on the plaintiff's claim for malpractice where the plaintiff

8    did not learn until he visited a different dentist that the defendant had left a piece of metal

9    in his mouth and did not inform the plaintiff this had happened).  Constructive fraud is not

10   applicable in Andrich's case because Andrich has not alleged that he ever learned that

11   Thrasher actually withheld material information from Andrich's case file.  Plaintiff merely

12   speculates there is something in his file that Thrasher did not turn over to him.

13   Andrich filed a declaration dated July 4, 2016 in state court, averring that as of the

14   date of the declaration, he did not have his file, specifically stating that Thrasher had

15   declined to print the text messages he exchanged with the state and other parties and had

16   not put the messages in Andrich's file.  (Doc. 33-2 at 71-72 ¶¶ 7, 8,13.)  This shows that

17   Andrich was aware at least by July 4, 2016 of the facts supporting his claims of abuse of

18   process, conversion, and fraudulent concealment.  Therefore, Andrich had until July 4,

19   2018 to file these claims against Thrasher.  At the latest, Andrich had until December 11,

20   2018 to file his Complaint, which is two years after he filed his allegedly deficient PCR.

21   Because Andrich did not file his claims in Counts Seven, Eight, and Ten until June 22,

22   2020, those claims are barred by the statute of limitations, and the Court will dismiss those

23   claims.

24   **C.    Count Nine**

25   Andrich alleges in Count Nine that Hopkins aided and abetted Thrasher's theft of

26   Andrich's *State v. Andrich* file by refusing to deliver the text messages and other parts of

27   the file and by filing a Notice of Compliance that Hopkins knew to be false at the time of

28   filing.  (Doc. 19 ¶¶ 220-226.)

1    Plaintiff alleges that Hopkins filed his Notice of Compliance on April 27, 2016,

2    avowing that he had delivered a CD containing all correspondence from Andrich's case,

3    but when Andrich reviewed the CD, he did not find the text messages, notes, and letters he

4    thought should be there.  (*Id.* ¶¶ 113-118.)  Thus, Plaintiff had until April 27, 2018—or at

5    the latest, until December 11, 2018, two years after he filed his allegedly deficient PCR—

6    to file this claim.  Accordingly, this claim is time barred, and the Court will dismiss Count

7    Nine.

8         **D.    Count Eleven**

9         Andrich alleges in Count Eleven that Thrasher committed abuse of process when he

10   sent a certification letter to Andrich on October 21, 2020 pursuant to Local Rule 12.1(c)

11   threatening Plaintiff "if Plaintiff did not dismiss this lawsuit to recover Plaintiff's files in

12   Attorney Thrasher's possession."[9]  (Doc. 19 ¶ 234.)  Specifically, Thrasher stated in his

13   letter that he "intend[ed] to pursue all remedies available under Arizona law including

14   counterclaims for abuse of process as well as breach of contract arising out of your failure

15   to honor the terms of your fee agreement with my firm."  (*Id*.)  Andrich alleges that

16   Thrasher threatened breach of contract knowing there was a mandatory arbitration clause

17   in the fee agreement, which "precludes any breach of contract lawsuit," and that Thrasher

18   used the Court's Local Rule 12.1(c) process "for an ulterior purpose not proper in the

19   regular conduct of the proceedings" because Thrasher did not want to produce part of

20   Andrich's file "that objectively evidence[s] ineffective assistance of counsel against

21   Thrasher."  (*Id.* ¶¶ 236, 238.)

22        Under Arizona law, an abuse of process claim requires a plaintiff to present evidence

23   that a defendant committed "a willful act in the use of judicial process . . . for an ulterior

24   purpose not proper in the regular conduct of the proceedings."  *Fappani v. Bratton*, 407

25   P.3d 78, 81 (Ariz. Ct. App. 2017) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz.

26

27        [9] Local Rule of Civil Procedure 12.1(c) requires that a party moving to dismiss
28   certify that the movant notified the opposing party of the issues asserted in the motion and
     that the parties were unable to agree that the pleading was curable by a permissible
     amendment offered by the pleading party.

Ct. App. 1982)).  Establishing an ulterior purpose requires "a showing that the process has been used primarily to accomplish a purpose for which the process was not designed." *Nienstedt*, 6551 P.2d at 881 (citations omitted).  "Unlike the tort of malicious prosecution, which covers the initiation of criminal proceedings with malice and without probable cause, abuse of process addresses misuse of process after proceedings have been initiated." *Ludwig v. Arizona*, No. CV 16-03826-PHX-DGC, 2018 WL 1015371, at *5 (D. Ariz. Feb. 22, 2018) (citing *Joseph v. Markowitz*, 551 P.2d 571, 573-74 (Ariz. Ct. App. 1976)). "Thus, 'abuse of process requires some act beyond the initiation of a lawsuit[.]'"  *Id.* (quoting *Joseph*, 551 P. 2d at 575).

Andrich fails to state a claim in Count Eleven because even if the arbitration clause in the fee agreement precludes a "breach of contract lawsuit," the language Plaintiff quotes from Thrasher's letter does not say that Thrasher would pursue a breach of contract claim in any particular forum or that the arbitration agreement precluded bringing a breach of contract counterclaim within the arbitration process.  Therefore, Andrich fails to state a claim, and the Court will dismiss Count Eleven.

**VI.    Defendant Phillis's Motion to Dismiss**

Defendant Phillis moves to dismiss the constitutional claims against her in Counts One through Five on the basis that they are barred by the statute of limitations and fail to state a claim.  (Doc. 29.)

Andrich alleges in Count One that Phillis violated his First Amendment rights by refusing to deliver Andrich's entire file to Andrich, specifically all text messages, emails, and Andrich's October 2, 2015 letter to Thrasher, and refusing to purchase and provide case law Andrich needed for his PCR, thereby denying Andrich access to the court.  (Doc. 19 ¶¶ 154-166.)  Andrich alleges in Count Two that Phillis retaliated against him for filing a civil rights lawsuit, in violation of Andrich's First Amendment rights.  (*Id.* ¶¶ 167-174.) Andrich alleges in Count Three that Phillis violated his First Amendment and Fourteenth Amendment rights by withholding case law, documents, legal supplies and the state court file that Andrich needed to bring a meritorious PCR.  (*Id.* ¶¶ 175-182.)  Andrich alleges in

1    Count Four that Phillis violated his First Amendment rights by withholding evidence
2    Andrich needs for his Petition for Writ of Habeas Corpus, specifically the text messages,
3    emails, and Andrich's October 2, 2015 letter to Thrasher.  (*Id.* ¶¶ 183-192.)  Andrich
4    alleges in Count Five that Phillis violated his Fourteenth Amendment rights by "a policy,
5    practice, or custom of either withholding trial court files, case law and legal supplies from
6    indigent defendants pursuing post-conviction relief pro se, or paying contract attorneys to
7    act as advisory counsel and intentionally withholding trial court files, case law and legal
8    supplies from indigent defendants," and these policies, practices, or customs "were the
9    moving force behind Plaintiff's inability to both present a 'nonfrivolous' or 'arguable'
10   underlying claim to the *State v. Andrich* trial court, and/or return 300 client files to former
11   clients as required by PDJ's May 15, 2015 Order and Rule 72, Ariz. S.Ct."  (*Id.* ¶¶ 193-
12   197.)

13          Phillis argues that each of these claims is based on the same allegations that Phillis
14   conspired to withhold Andrich's case file, legal materials, and a legal textbook, and by
15   withholding these materials, Phillis caused Andrich's PCR to be denied on June 20, 2018.
16   (Doc. 29 at 3.)  Phillis contends that these allegations are identical to the allegations
17   Andrich made against Phillis and McEachern in *Andrich v. Ryan*, which shows that
18   Plaintiff had full knowledge by at least July 3, 2017, "of the existence and nature of his
19   current claims against Phillis."  (*Id.* at 3, citing Ex. 2 ¶¶ 97-102 (First Amended Complaint
20   filed July 3, 2017 in Case No. 17-00047-TUC-RM) (Doc. 29-1 at 39-41).)

21          Andrich responds that his "backward-looking" claim against Phillis did not accrue
22   until June 20, 2018, when his PCR was denied, and that he timely filed his original
23   Complaint on June 22, 2020, since June 20, 2020 was a Saturday.  (Doc. 39 at 4.)

24          Counts One, Three, Four, and Five all related to Phillis' alleged role in Andrich
25   filing a deficient PCR on December 11, 2017.  Therefore, Andrich knew by that date, at
26   the latest, of his injury because he knew he did not have the correspondence and documents
27   he believes he needed to file a successful PCR.  As with Defendant Hopkins, Andrich had
28   until December 11, 2019 to file his claims in Counts One, Three, Four and Five against

1    Phillis.  Because Andrich did not file his original Complaint naming Phillis as a Defendant

2    until June 22, 2020, his claims against Phillis in Counts One, Three, Four and Five are

3    barred by the statute of limitations, and the Court will dismiss these claims.

4         Andrich's retaliation claim in Count Two is likewise barred by the statute of

5    limitations because Andrich alleges that Phillis retaliated against him for filing a civil rights

6    complaint in the District Court by withholding Andrich's state court file, documents, and

7    case law "reasonably necessary for Plaintiff to research, draft and edit a meritorious PCR."

8    (Doc. 19 ¶ 170.)  Therefore, Andrich knew of the alleged retaliation by December 11, 2017

9    when he filed his PCR and had until December 11, 2019 to file his retaliation claim against

10   Phillis.  Because Andrich did not file his Complaint by that date, the Court will dismiss

11   Count Two.

12   **VII.   Conclusion**

13        The Court will grant all three Motions to Dismiss and will dismiss the First

14   Amended Complaint.  All federal claims in this case are subject to the statute of limitations

15   defense such that amendment of those claims would be futile.  The only claim that is not

16   subject to the statute of limitations defense is Andrich's state law abuse-of-process claim

17   against Thrasher for Thrasher's October 21, 2020 certification letter sent to Andrich on

18   October 21, 2020.  The Court declines to exercise supplemental jurisdiction over the

19   remaining state law claim.  *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court

20   may decline to exercise supplemental jurisdiction over related state-law claims once it has

21   'dismissed all claims over which it has original jurisdiction'" (quoting 28 U.S.C.

22   § 1367(c)(3))); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994)

23   (when federal law claims are eliminated before trial, the court generally should decline

24   jurisdiction over state law claims and dismiss them without prejudice).

25        Accordingly, the Court will dismiss Andrich's First Amended Complaint without

26   leave to amend.  *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 538 (9th Cir.

27   1989) ("Leave to amend need not be given if a complaint, as amended, is subject to

28   dismissal.").

**IT IS ORDERED:**

(1)     Defendants' Motions to Dismiss (Docs. 28, 29, 33) are **granted**.

(2)     Plaintiff's First Amended Complaint (Doc. 19) and this action are **dismissed** as barred by the applicable statutes of limitation and for failure to state a claim.

(3)     The Clerk of Court must enter judgment accordingly.

Dated this 4th day of June, 2021.

Honorable Rosemary Márquez
United States District Judge